

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-12-00516-CV

---

1 LINCOLN FINANCIAL COMPANY                                    APPELLANT

V.

AMERICAN FAMILY LIFE                                               APPELLEE
ASSURANCE COMPANY OF
COLUMBUS

----------

FROM COUNTY COURT AT LAW NO. 2 OF TARRANT COUNTY
TRIAL COURT NO. 2011-000868-2

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

In ten issues, Appellant 1 Lincoln Financial Company appeals from an adverse summary judgment granted in favor of Appellee American Family Life Assurance Company of Columbus (Aflac). We will affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. BACKGROUND

Adriana Harrison obtained a life insurance policy from Aflac in October 2003. In addition to coverage on Harrison's life, the policy contained a rider that provided life insurance coverage on her dependent children in the amount of $15,000. Harrison was the beneficiary under the rider, and for benefits to be payable thereunder, Aflac had to receive proof that the insured child had died while the rider was in effect. The policy was expressly assignable.

Harrison's daughter died on June 7, 2010, during the term of the policy. To pay for the funeral, on June 16, 2010, Harrison assigned the benefits under the rider ($15,000) to Harrison's Funeral Home, which she owns and operates, and the funeral home reassigned the benefits to 1 Lincoln. Veronica Herrera, a 1 Lincoln employee, spoke with Aflac representatives to verify the details of the policy, and on June 18, 2010, 1 Lincoln wired $14,250[2] to Harrison's Funeral Home and submitted the assignment and other documents to Aflac. Aflac did not immediately process the claim, however, because 1 Lincoln did not submit a certified death certificate.

On July 30, 2010, Harrison again assigned her benefits under the child rider to Funeral Funding Center, Inc. (FFC).[3] Soon thereafter, in early August

---

[2]1 Lincoln imposed a $750 service charge on Harrison's Funeral Home for the loan.

[3]In exchange for the assignment, FFC either paid Harrison money or paid for the bill that she owed to her funeral home.

2010, FFC submitted the assignment, an Aflac claim form, and a certified death certificate for Harrison's daughter to Aflac, and Aflac paid the death benefits under the rider to FFC. 1 Lincoln later learned that Aflac had paid the benefits to someone else, and it questioned Harrison about the other assignment. Harrison gave 1 Lincoln a number of excuses and ultimately never reimbursed it for the money that it had loaned her funeral home.

1 Lincoln sued Aflac for negligence, breach of contract, promissory estoppel, and negligent misrepresentation and sought damages in the amount of $15,000. 1 Lincoln claimed that Aflac was at fault for not paying 1 Lincoln's earlier-in-time assignment and that Aflac had assured that it would remit the benefits under the rider to 1 Lincoln. Aflac moved for summary judgment on each of 1 Lincoln's claims, arguing that it was entitled to summary judgment not only on the merits of each claim, but also because 1 Lincoln lacked the capacity to pursue the suit because its corporate privileges had been forfeited.[4] 1 Lincoln responded in part that it had capacity to pursue its suit because it had changed its name to Lincoln Factoring, LLC. Aflac replied that, to the extent that it made any difference, 1 Lincoln had not merely changed its name; instead, Lincoln Factoring was a completely different company, and summary judgment was

---

[4]The parties used the term "standing" at trial, but Aflac's argument implicated 1 Lincoln's capacity to sue. *See John C. Flood of DC, Inc. v. SuperMedia, L.L.C.*, 408 S.W.3d 645, 650 (Tex. App.—Dallas 2013, pet. denied).

3

proper because 1 Lincoln lacked capacity to prosecute its claims. The trial court granted Aflac's motion without stating its reasons, and this appeal followed.

### III. STANDARD OF REVIEW

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence that raises a fact issue. *Van v. Pena*, 990 S.W.2d 751, 753 (Tex. 1999).

We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort*, 289 S.W.3d at 848. When a trial court's order granting summary

4

judgment does not specify the ground or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995).

## IV. CAPACITY

Insofar as the trial court granted Aflac summary judgment on the ground that 1 Lincoln lacked capacity to sue, 1 Lincoln argues in its third, fourth, fifth, and sixth issues that the trial court erred because (1) Aflac waived its right to challenge 1 Lincoln's capacity to prosecute this suit by not raising that ground in a verified pleading and (2) 1 Lincoln and Lincoln Factoring should be treated as the same entity.

Aflac responds that instead of objecting at the summary judgment stage to its failure to challenge 1 Lincoln's capacity in a verified pleading, 1 Lincoln tried the issue by consent. Because 1 Lincoln joined the issue on the merits, Aflac argues that 1 Lincoln cannot complain about the pleading deficiency for the first time on appeal. On the merits, Aflac argues that 1 Lincoln lacked the capacity to prosecute its claims as a matter of law because it forfeited its corporate privileges for failing to pay franchise taxes, which is dispositive of the entire appeal.

1 Lincoln's waiver argument is misplaced. When capacity is contested, rule of civil procedure 93 requires that a verified plea be filed unless the truth of the matter appears of record. *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 56 (Tex. 2003). A party who fails to raise the issue of capacity in the trial

5

court may not raise the issue for the first time on appeal. *See Pledger v. Schoellkopf*, 762 S.W.2d 145, 145–46 (Tex. 1988); *Dakil v. Lege*, 408 S.W.3d 9, 11–12 (Tex. App.—El Paso 2012, no pet.).

This is not a case in which Aflac failed to challenge 1 Lincoln's capacity in the trial court and is now attempting to raise it for the first time on appeal. That argument would no doubt be waived. *See Pledger*, 762 S.W.2d at 146. Instead, Aflac raised the issue of 1 Lincoln's capacity in its motion for summary judgment, albeit in an unverified pleading. The appropriate inquiry therefore is not whether Aflac "waived" its right to challenge 1 Lincoln's capacity for filing an unverified pleading, as 1 Lincoln suggests, but how 1 Lincoln responded to Aflac's deficient but timely pleading.

Issues subject to pleading requirements, like verified denials and affirmative defenses, may be tried by consent, including in summary judgment proceedings. *See Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 495 (Tex. 1991); *Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc.*, 348 S.W.3d 894, 899 (Tex. 2011). It is well established that a party who fails to raise the lack of a proper pleading and allows an issue to be tried by consent cannot later raise the pleading deficiency for the first time on appeal. *Roark*, 813 S.W.2d at 495.

Instead of objecting to Aflac's failure to file a verified pleading challenging capacity, 1 Lincoln litigated the issue, arguing that it had capacity to sue Aflac because it had changed its name to Lincoln Factoring. 1 Lincoln thus tried the capacity issue by consent, and it cannot argue for the first time on appeal that the

6

summary judgment was improperly granted on account of Aflac's failure to file a verified pleading according to rule 93. *See id.*; *see also* Tex. R. Civ. P. 90 ("Every defect . . . in a pleading . . . which is not . . . brought to the attention of the judge in the trial court . . . shall be deemed to have been waived by the party seeking reversal on such account . . . ."). We overrule 1 Lincoln's third and fourth issues.

Aflac argues that that 1 Lincoln lacked the capacity to prosecute all of its claims as a matter of law because it forfeited its corporate privileges for failing to pay franchise taxes. Aflac directs us to a provision of the tax code that states that when the privileges of a corporation are forfeited, the corporation shall be "denied the right to sue or defend in a court of this state." Tex. Tax Code Ann. § 171.252(1) (West 2008). But as we recently explained, federal and state courts have long interpreted section 171.252 to preclude entities only from filing suit *after* forfeiting their right to do business, not to prohibit them from continuing an action filed before their privileges had been forfeited. *See Waterway Ranch, LLC v. City of Annetta*, 411 S.W.3d 667, 673 (Tex. App.—Fort Worth 2013, no pet.) (citing *Tex. Clinical Labs, Inc. v. Leavitt*, 535 F.3d 397, 403–04 (5th Cir. 2008); *Mossler v. Nouri*, No. 03-08-00476-CV, 2010 WL 2133940, at *5–6 (Tex. App.— Austin May 27, 2010, pet. denied)).

1 Lincoln filed its original petition on February 7, 2011. A document contained in the summary judgment record states that 1 Lincoln's corporate charter was forfeited on February 10, 2012, about one year later. Within that

7

document is a statement that "[t]he Comptroller of Public Accounts has determined that the taxable entity [1 Lincoln] has not revived its *forfeited privileges within 120 days after the date that the privileges were forfeited.*" [Emphasis added.] This is the only summary judgment evidence that is relevant to when 1 Lincoln forfeited its corporate privileges, and it does not establish when the privileges were forfeited. The statement could mean that as of February 10, 2012, it had been exactly 120 days since 1 Lincoln forfeited its corporate privileges, which would put that date at October 11, 2011, many months after 1 Lincoln filed suit. Or it could mean that 1 Lincoln had forfeited its corporate privileges at some other prior point in time and that it had been 120 days since then. Under that interpretation, no dates are certain. The statement is therefore insufficient to demonstrate that 1 Lincoln had forfeited its corporate privileges before suing Aflac. Because there is no summary judgment evidence that 1 Lincoln had forfeited its corporate privileges before February 7, 2011, the trial court could not have granted Aflac summary judgment on the ground that 1 Lincoln lacked capacity to prosecute this suit. *See Waterway Ranch*, 411 S.W.3d at 673. We overrule 1 Lincoln's fifth and sixth issues as moot.

## V. NEGLIGENCE

1 Lincoln argues in its first issue that the trial court erred by granting Aflac summary judgment on its negligence claim because Harrison assigned her benefits under the policy to 1 Lincoln before she assigned the same benefits to FFC. According to 1 Lincoln, long-standing Texas law requires that its first-in-

8

time assignment be paid before FFC's later-in-time assignment. In its tenth issue, 1 Lincoln argues that Aflac was negligent by allowing Harrison to defeat its rights as an irrevocable assignee.

The supreme court has clarified that "a party states a tort claim when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit." *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, No. 13-0776, 2014 WL 4116839, at *2 (Tex. Aug. 22, 2014). In arguing that Aflac was negligent for paying the benefits to FFC, 1 Lincoln does not complain that Aflac violated any duty outside of its contractual responsibility under the policy or that it suffered any losses aside from the benefits under the rider. Because 1 Lincoln does not contend that Aflac breached any duty independent of its contractual obligation, and because the loss of which 1 Lincoln complains is limited to its expectancy under the rider, 1 Lincoln's claim, if any, lies in contract, not tort. *See id.* We hold that the trial court did not err by granting Aflac summary judgment on 1 Lincoln's negligence claim, and we overrule its first and tenth issues.

## VI. BREACH OF CONTRACT

1 Lincoln argues in its second and ninth issues that the trial court erred by granting summary judgment on its breach of contract claim. Aflac argued in its motion for summary judgment that it had no enforceable contract with 1 Lincoln, but 1 Lincoln's claim is predicated upon the rights that it acquired as an assignee, not as a party that directly contracted with Aflac. An assignment is simply a

9

transfer of some right or interest. *Shipley v. Unifund CCR Partners*, 331 S.W.3d 27, 28 (Tex. App.—Waco 2010, no pet.) (op. on reh'g). When an assignee holds a contractually valid assignment, that assignee steps into the shoes of the assignor and may assert those rights that the assignor could assert. *See Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 420 (Tex. 2000). Thus, although Aflac and Harrison originally contracted for life insurance benefits, when Harrison assigned her rights under the child rider to 1 Lincoln, 1 Lincoln stepped into Harrison's shoes as the beneficiary under the rider and acquired her rights thereunder.

Aflac argues that "[t]o the extent Lincoln contends it became, essentially, a party to the insurance policy by virtue of the assignment, the Policy includes a provision whereby Aflac specifically disclaim[ed] liability for the validity or effect of any assignment." Indeed, the insurance policy states, "We [Aflac] will not be responsible for the validity or effect of any assignment." Of course, this language does not disclaim liability under the policy in the event of an assignment, but it does disclaim any contractual liability for a dispute between an assignor and an assignee over an assignment. As Aflac points out, it "confirmed by contract what already should be the case: with regard to any assignment agreement between Harrison and some third party, any disputes over the assignment or benefits thereunder should be resolved *between Harrison and the third party*." This is precisely the situation that we have in this case. Aflac honored an assignment— as it was contractually bound to do—when it received sufficient proof from FFC

10

that a covered child had died while the rider was in effect. The source of 1 Lincoln's alleged injury, however, is not that Aflac complied with its obligation under the policy as to FFC instead of 1 Lincoln, but that Harrison assigned the same benefits to two different entities, which ultimately left 1 Lincoln with a worthless assignment. Because Aflac specifically disclaimed any liability for such a dispute—one between Harrison and a third party—summary judgment was proper on 1 Lincoln's contract claim.[5] We overrule 1 Lincoln's second and ninth issues.

## VII. PROMISSORY ESTOPPEL AND NEGLIGENT MISREPRESENTATION

In its seventh and eighth issues, 1 Lincoln argues that the trial court erred by granting summary judgment on its promissory estoppel and negligent misrepresentation claims.

Although primarily a defensive issue, promissory estoppel is also a cause of action available to a promisee who has acted to his detriment in reasonable reliance on an otherwise unenforceable promise. *Wheeler v. White*, 398 S.W.2d 93, 96 (Tex. 1965). As for negligent misrepresentation, one element is that the

---

[5]1 Lincoln argues that the provision disclaiming liability under circumstances like this does not apply to the beneficiary's right to assign after the insured dies, which is what happened here. Not only did 1 Lincoln not raise this argument in the trial court, the contention is not supported by the plain language of the unambiguous policy. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979) (reasoning that nonmovant may not raise on appeal new grounds for reversing summary judgment); *Glover v. Nat'l Ins. Underwriters*, 545 S.W.2d 755, 761 (Tex. 1977) (reasoning that plain language of insurance policy will be given effect when the parties' intent is discernable from the language).

11

defendant supplied false information for the guidance of another. *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999). Aflac argues that summary judgment was proper because there is no evidence that Aflac made a promise or supplied false information to 1 Lincoln.

Herrera, the 1 Lincoln employee who spoke with Aflac representatives to verify the details of the insurance policy, testified at her deposition that she had asked Aflac (1) whether the policy would cover the $15,000 assignment, (2) whether the policy had any outstanding loans, (3) whether there were any unpaid premiums, (4) whether the policy was contestable, (5) whether the policy had to be reinstated, and (6) about information regarding the beneficiary. Herrera confirmed that she did not ask whether there had been any other verification calls or assignments submitted and, more importantly, that no Aflac representative had told her that Aflac would honor the assignment and pay the benefits to 1 Lincoln.

In a letter dated June 18, 2010, 1 Lincoln notified Aflac that it was relying upon Aflac's representation that it "would recognize the assignment to [1 Lincoln]." However, Herrera, who signed the letter, acknowledged that Aflac did not state that it would accept 1 Lincoln's assignment and that the statement in the letter was not reflected in her notes from her conversation with Aflac representatives. Herrera verified that Aflac's representatives had not said anything that was not reflected in her notes. The form letter thus did not accurately represent the parties' communications, according to 1 Lincoln's own

12

employee, and it cannot be used to artificially manufacture a fact issue. *See Mann Frankfort*, 289 S.W.3d at 848 (providing that we credit evidence favorable to the nonmovant *if* reasonable jurors could do so).

1 Lincoln argues that Aflac committed a violation of insurance code section 541.061, but it did not plead or raise this issue in the trial court, and it may not raise it for the first time on appeal. *See City of Houston*, 589 S.W.2d at 678.

We hold that the trial court properly granted summary judgment on 1 Lincoln's promissory estoppel and negligent misrepresentation claims because Aflac conclusively negated an essential element of each claim: that Aflac made a promise and supplied false information to 1 Lincoln. *See F.E. Appling Interests*, 991 S.W.2d at 791; *Wheeler*, 398 S.W.2d at 96. We overrule 1 Lincoln's seventh and eighth issues.

## VIII. CONCLUSION

Having overruled all of 1 Lincoln's issues, we affirm the trial court's judgment.

/s/ Bill Meier

BILL MEIER
JUSTICE

PANEL: MCCOY, MEIER, and GABRIEL, JJ.

DELIVERED: October 2, 2014

13